1  **Sean D. Garrison** (AZ Bar No. 014436)
2  E-mail:  sean.garrison@bacalgroup.com
   Direct Dial: 480-719-8501
3  **BACAL LAW GROUP, P.C., DBA**
   **BACAL & GARRISON LAW GROUP**
4  6991 East Camelback Road, Suite D-102
   Scottsdale, Arizona  85251
5  Fax: (480) 245-6231
6
7  *Attorneys for Defendants Michael and Lauren  Breus*
8
                **IN THE UNITED STATES DISTRIC COURT**
9                **FOR THE DISTRICT OF ARIZONA**
10

| | |
|---|---|
| IOW, LLC, an Arizona limited liability company; When Enterprises Corp, a Delaware corporation, | Case No. 2:18-cv-01649-DGC |
| Plaintiffs, | **DEFENDANTS MICHAEL AND LAUREN BREUS'S MOTION FOR RECONSIDERATION OF COURT'S ORDER ON SUMMARY JUDGMENT AS TO COUNTS V AND VI OF PLAINTIFFS' SECOND AMENDED COMPLAINT** |
| v. | |
| Michael Breus and Lauren Breus, husband and wife; Hachette Book Group, Inc., a New York corporation; Little, Brown And Company, a New York corporation, | |
| Defendants. | **(Oral Argument Requested)** |
| ―――――――――――――――― | |
| Michael Breus and Lauren Breus, husband and wife, | |
| Counterclaimants, | |
| v. | |
| When Enterprises Corp, a Delaware corporation, | |
| Counterdefendant. | |

Pursuant to Local Rule 7.2(g), Defendants Michael and Lauren Breus ("Breus") move the Court to reconsider that portion of its Order [Doc #94] denying Defendants' summary judgment motion as to Counts V and VI of the Second Amended Complaint alleging trademark infringement and unfair competition.  Defendants seek reconsideration of two separate and distinct issues.  First, Defendants respectfully submit the Court manifestly erred in holding that the *Rogers* test does not apply to Dr. Breus's book.  Second, the Court also erred in finding that there are issues of fact concerning the issue of priority as to Plaintiff When Enterprises Corp.'s ("WEC") POWER OF WHEN trademark.

(1) The Court Should Apply The *Rogers* Test.

The Court concluded that the *Rogers* test is inapplicable and declined to address the parties' arguments regarding the *Rogers* analysis.  Doc # 94, p. 22.  Its conclusion was based on three analytical errors: (i) that the *Rogers* test applies only if *Plaintiff's* mark "has assumed cultural significance or meaning beyond its source identifying function;" (ii) that *Rogers* does not apply to works of non-fiction; and (iii) that Defendants' book title, as opposed to the underlying work itself, is the relevant "expressive work" for evaluating whether the *Rogers* test applies.

*(a) The Court erred in holding that it must determine the significance of WEC's Power of When mark in order to apply the Rogers test*

In concluding that no First Amendment rights are implicated in this case, the Court relied upon *Rebelution, LLC v. Perez*, 732 F. Supp. 2d 883, 887–888 (N.D. Cal. 2010), which held that "[P]laintiff's mark must be of such cultural significance that it has become an integral part of the public's vocabulary … . [*Rogers*] requires the artistic relevance of defendant's use to be with reference to the meaning associated with plaintiff's mark."  As a result, the Court mistakenly asserted that it "must determine . . . whether Plaintiff's mark, Power of When, has assumed cultural significance or meaning beyond its source-identifying function such that Defendants' use of the mark in Dr. Breus's book title is expressive, rather than simply

1

commercial use or advertising for his non-fiction work."  Doc #94, p. 20.  It then found that Defendants had cited no evidence that *Plaintiff's* mark had "'transcend[ed] [its] identifying purpose,' 'enter[ed] public discourse and become an integral part of our vocabulary,' 'assume[d] cultural significance,' has been imbued 'with a meaning beyond its source-identifying function,' or 'evinces an intent to convey a particularized message' that 'would [likely] be understood by those who viewed it.'"  Id. at p. 21.

However, the Ninth Circuit considered and rejected this very premise in *Twentieth Century Fox Television v. Empire Distribution, Inc.*, 875 F.3d 1192, 1197-1198 (9th Cir. 2017).  In *Twentieth Century Fox*, the plaintiff had similarly argued that "that the *Rogers* test incudes a threshold requirement that a mark have attained a meaning beyond its source-identifying function."  *Id*. at 1197.   The Ninth Circuit held there is no such prerequisite to applying the *Rogers* test.  *Id*. at 1198.  This holding was reiterated in *Gordon v. Drape Creative, Inc.*, 909 F. 3d 257, 267 (9th Cir. 2018) ("Whether a mark conveys a meaning beyond identifying a product's source is not a threshold requirement but only a relevant consideration: . . . such transcendence is not necessary to trigger First Amendment protection."); *see also* 6 J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition § 31.144.50 (5th ed. 2017) (noting the Ninth Circuit's rejection of the Court's analysis on this issue).   Accordingly, whether WEC's POWER OF WHEN trademark has any significance beyond its source-identifying function does not determine whether the *Rogers* test applies to Dr. Breus's book. The Court was wrong when it said it must make such a determination in evaluating whether to apply *Rogers*.

Furthermore, when applying the *Rogers* test, no reference to the Plaintiff's mark and its cultural significance or transcendence is necessary to find that the title of Dr. Breus's book is artistically relevant to his work.  *See Twentieth Century Fox*, 875 F. 3d 1198-1199.  Under the first prong of the *Rogers* test, "[a] title may have artistic relevance by linking the work to another mark, as with 'Barbie Girl,' *or* it may have artistic relevance by supporting the themes

2

and geographic setting of the [underlying] work, as with *Empire*."  *Id*. at 1199 (bold and underline added).  In the latter context, the status of the plaintiff's mark is not a consideration. Instead, in this context the allegedly infringing title is considered only in connection with the defendant's own work, as illustrated by the facts in *Twentieth Century Fox*.  In that case, Twentieth Century Fox made no showing that the plaintiff's EMPIRE RECORDS mark "had assumed cultural significance," or held "a meaning beyond its source-identifying function;" nor was it required to do so in order to receive First Amendment protection for the title of its television show.  *Id*. at 1198.  The title was considered only in the context of the television show and found to be artistically relevant to the themes and setting of the show.  *Id*.  Similarly, the title of Dr. Breus's book is relevant to the themes, ideas and message being conveyed in his book, which advises "when" people with certain chronotypes should undertake certain tasks and how doing so can meaningfully change their lives.  See Doc #76, p. 15 and #91, pp. 8-9.  Indeed, Plaintiffs did not argue in their Response (Doc #83) that the title was not artistically relevant to Dr. Breus's book and therefore conceded this point.

The Court manifestly erred in holding that it must determine whether Plaintiff's mark assumed cultural significance or has any meaning beyond its source-identifying function.  That is neither a prerequisite to applying the *Rogers* test, nor a required showing under the *Rogers* test.

*(b) Works of non-fiction are subject to First Amendment protection and the Rogers test*

The Court acknowledged that the First Amendment applies to books.  Doc #94, p. 20. The *Rogers* court stated that books are "indisputably works of artistic expression and deserve protection." *Rogers v. Grimaldi*, 875 F.2d 994, 997 (2d Cir. 1984).  The Ninth Circuit has further held that a work need not be "the expressive equal of *Anna Karenina* or *Citizen Kane* to merit First Amendment protection."  *See Brown v. Electronic Arts, Inc.*, 724 F.3d 1235, 1241 (9th Cir. 2013).  Nevertheless, the Court held that the *Rogers* test does not apply to Dr.

3

Breus's book, noting that "Defendants cite no Ninth Circuit case applying *Rogers* to the title of a non-fiction book."  Doc #94, p. 19.

Significantly, however, the only cases addressing non-fiction works cited by either party or the Court were those cases cited by Defendants, and those cases held that *Rogers* applied to the non-fiction works at issue (Doc #91, p. 8[1]).  The Court did not refer to these cases in its decision: *Hidden City Philadelphia v. ABC, Inc.,* 2019 WL 1003637 (E.D. Pa. Mar. 1, 2019) (*Rogers* test applied to non-fiction videos about historical places in Philadelphia and complaint dismissed); *Rin Tin Tin, Inc. v. First Look Studios, Inc.*, 671 F. Supp. 2d 893 (S.D. Tex. 2009) (applying the *Rogers* test as to a movie based on the life story of the original Rin Tin Tin and granting summary judgment to the defendant).  In contrast, neither Plaintiff nor the Court cited any case from *any* jurisdiction holding that *Rogers* does not apply to works of non-fiction.

Like the cases cited by Defendants, more recent cases have also held that the *Rogers* test applies to non-fiction works.  In *Brown v. Showtime Networks*, __ F.3d __, 2019 WL 3798044 (S.D.N.Y. August 2, 2019), the court first noted that the First Amendment protects works "whether fictional or non-fictional" from right of publicity tort claims.  It went on to apply *Rogers* to a documentary film about the life of Whitney Houston and dismissed the plaintiff's Lanham Act claim.  *See also Dickinson v. Ryan Seacrest Enterprises, Inc.*, 2019 WL 3035090 (C.D. Cal. March 26, 2019) (applying *Rogers* to a reality TV episode and related advertising and dismissing Lanham Act claims).

Although Dr. Breus's book is a work of non-fiction, it is not a mere recitation of facts. Dr. Breus's ideas are conveyed with a substantial degree of independent and creative expression.  Non-fiction works, including Dr. Breus's book, are expressive works entitled to First Amendment protection from Lanham Act and state unfair competition claims.  The Court

---

[1] The page number referenced is the ECF page number.

1    erred to the extent its decision not to apply the *Rogers* test is based on the fact that Dr. Breus's

2    book is a non-fiction book.

3         *(c) The book, not its title, is the "expressive work" at issue*

4         In declining to apply the *Rogers* test, the Court also refused to consider the book as a

5    whole, including its contents, and erroneously referred to the title as the expressive work at

6    issue.  Doc #94 at pp. 20-21 and p. 22 (note 9).  Whether the *Rogers* test should be applied is

7    determined not by the title, but instead by whether the entire underlying work is an expressive

8    work.  If the underlying work is an expressive work, the Court must apply the *Rogers* test.  *See*

9    *E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1100 (9th Cir. 2008) ("Under

10   *MCA Records* and the cases that followed it, only the use of a trademark with 'no artistic

11   relevance to the underlying work whatsoever ' does not merit First Amendment protection.")

12   (citation omitted).  The Court was wrong to limit its analysis only to the book title.

13        Focusing only on the title, the Court concluded that "Defendants' use of The Power of

14   When falls within traditional trademark concerns of consumer deception and confusion as to

15   Plaintffs' mark, and implicates none of the First Amendment concerns that *Rogers* was

16   adopted to safeguard."  Doc #94, p. 21.  It adopted a quote from the *Rebelution* case, equating

17   a book to a can of peas in the marketplace.  *Id*.  As noted above, the *Rebelution* decision is

18   unsound in light of the Ninth Circuit's subsequent decision in *Twentieth Century Fox*.

19   Moreover, the quotes upon which the Court relies appears to have been taken out of context

20   by the *Rebelution* court.  The Second Circuit in *Rogers* went on to explain that titles have a

21   hybrid function that is different from the mark for an ordinary commercial product and

22   concluded that "the expressive element of titles requires more protection than the labeling of

23   ordinary commercial products."  *Rogers*, 875 F.3d at 998.  The *Rebelution* court ignored this

24   larger context and this ultimate conclusion.  Contrary to the implication of the *Rebelution*

25   quote, book titles are not the equivalent of a can of peas or a brand of shoes.  *See Mattel*, 296

26   F.3d at 901-902 (distinguishing titles from a shoe brand).

5

The Ninth Circuit has also recognized that consumers do not rely upon the title of a book to identify its source in the way that they would rely upon a trademark to designate the source of ordinary commercial product:  "A title is designed to catch the eye and to promote the value of the underlying work. Consumers expect a title to communicate a message about the book or movie, but they do not expect it to identify the publisher or producer." *Mattel*, 296 F.3d at 902.  This further differentiates a book title from an ordinary consumer product and underscores why the *Rogers* test applies above and beyond the traditional trademark likelihood of confusion test.

The Court erred in limiting its analysis to the title, refusing to consider the expressive nature of the entire book, and holding that the book title falls within "traditional trademark concerns."  The Ninth Circuit has explained that the reasons for treating expressive works differently from other works include (1) that "they implicate the First Amendment right of free speech, which must be balanced against the public interest in avoiding consumer confusion"; and (2) that "consumers are less likely to mistake the use of someone else's mark in an expressive work for a sign of association, authorship, or endorsement." *Twentieth Century Fox*, 875 F.3d at 1196 (citing *Rogers*, 875 F.2d at 997-1000; and *Mattel*, 296 F.3d at 900, 902).

For all three of the foregoing reasons, the Court should reconsider its summary judgment order declining to apply the *Rogers* test.  It should apply that test and address the parties' respective arguments on the elements of that test.  Where an allegedly infringing use of a mark appears in the title of an expressive work, such as a book, it does not violate the Lanham Act "unless the title has no artistic relevance to the underlying work whatsoever or if it has some artistic relevance, unless the title explicitly misleads as to the source or the content of the work." *Mattel*, 296 F.3d at 902.  Because WEC conceded that Dr. Breus's title is artistically relevant to his book, and Plaintiffs have admitted that Defendants did not explicitly mislead consumers about the source of the book, the Court should grant summary judgment in

Defendants' favor under the *Rogers* test on Counts V and VI of the Second Amended Complaint.

>   (2) <u>The Court appears to have misapprehended the issue of priority as to Plaintiff's POWER OF WHEN mark.</u>

In denying Defendants' summary judgment motion on the issue of priority as to WEC's POWER OF WHEN mark, the Court ruled "that an issue of fact exists regarding whether Defendants' pre-August 2016 activities rebut Plaintiffs' presumption of ownership." Doc #94, p. 16. It went on to conclude that "a reasonable jury could . . . determine Defendants' pre-registration activities . . . were not sufficiently public to identify the mark in an appropriate segment of the public mind as Defendants' mark." *Id.* This conclusion results from two errors: (1) Defendants do not claim any trademark rights in the title of Dr. Breus's book; and (2) ownership and priority are two distinct though related concepts.

Plaintiffs' arguments, and the Court's reasoning, involve the assertion of competing trademark rights, which are not pertinent to this dispute and miss the point. The issue is not which party first developed trademark rights in the POWER OF WHEN mark. Breus claims no such trademark rights. The issue is not whether Dr. Breus ever acquired ownership of a trademark himself but merely whether WEC can establish that it obtained ownership of its POWER OF WHEN mark *prior to* the commencement of the alleged infringement.

In order to prevail on its trademark and unfair competition claims concerning its POWER OF WHEN mark, WEC must establish both ownership of the mark and that it acquired such ownership prior to the alleged infringement. *See Sebastian Brown Prods., LLC v. Muzooka, Inc*., 143 F. Supp. 3d 1026, 1041 (N.D. Cal. 2015) (dismissing complaint because "Plaintiff has not alleged priority of use over Defendants.") It would be grossly unfair to conclude that an activity (i.e., the naming, promotion, and distribution of a book) that began in good faith before the plaintiff ever obtained a trademark could somehow become infringing at a later date. Because Defendants' adoption and use of *The Power of When* for his book and

websites pre-date WEC's August 28, 2016 earliest priority date, WEC cannot establish its own *prior* ownership of the POWER OF WHEN mark vis-à-vis the allegedly infringing acts. The Court should reconsider this portion of its summary judgment order and grant summary judgment to Defendants because WEC cannot demonstrate priority with respect to its POWER OF WHEN trademark and, therefore, Dr. Breus's book and related promotional activities cannot be held to infringe that trademark.

## CONCLUSION

The Court should reconsider its decision denying summary judgment to Defendants on Counts V and VI of the Second Amended Complaint. In concluding that the First Amendment and the *Rogers* test are inapplicable, the Court relied primarily upon a rationale the Ninth Circuit has explicitly rejected. The cultural significance/transcendent meaning of a mark is not a prerequisite to the application of the *Rogers* test. Dr. Breus's work is indisputably an expressive work entitled to First Amendment protection here. Once the *Rogers* test is applied, Defendants are entitled to summary judgment on Counts V and VI of the Second Amended Complaint.

The Court should also reconsider that portion of its opinion declining to grant summary judgment on the issue of WEC's priority of rights. The issue here is not one of competing trademark rights but instead merely whether WEC can establish that it owned POWER OF WHEN prior to the alleged infringement. Nothing more than that. Because WEC cannot do so, the Court should award summary judgment to Defendants on this issue as well.

Dated: September 9, 2019

By:   s/Sean Garrison/
Sean D. Garrison (AZ Bar No. 014436)
E-mail:  sean.garrison@bacalgroup.com
BACAL & GARRISON LAW GROUP
6991 East Camelback Road, Suite D-102
Scottsdale, Arizona  85251
Telephone:  (480) 245-6230

Fax: (480) 245-6231
*Attorneys for Defendants*

## CERTIFICATE OF FILING AND SERVICE

I certify that on September 9, 2019, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and for transmittal of a Notice of Electronic Filing to the CM/ECF registrants listed below:


Maria Crimi Speth (mcs@jaburgwilk.com)
David L. Allen (dla@jaburgwilk.com)
Laura Rogal  (lar@jaburgwilk.com)
Michael B. Dvoren (mbd@jaburgwilk.com)
Aaron K. Haar (akh@jaburgwilk.com)
Jaburg & Wilk, P.C.
3200 N. Central Avenue, 20th Floor
Phoenix, AZ 85012
Attorneys for Plaintiff


    /Sean D. Garrison/
Sean D. Garrison