**Jaburg & Wilk, P.C.**
3200 N. Central Avenue, 20th Floor
Phoenix, AZ 85012
602.248.1000

Maria Crimi Speth (012574)
mcs@jaburgwilk.com
Laura Rogal (025159)
lar@jaburgwilk.com
Michael B. Dvoren (027386)
mbd@jaburgwilk.com
Aaron K. Haar (030814)
akh@jaburgwilk.com

Attorneys for Plaintiffs/Counterdefendant

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IOW, LLC, an Arizona limited liability company; WHEN Enterprises Corp. a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>Michael Breus and Lauren Breus, husband and wife; Hachette Book Group, Inc., a New York corporation; Little, Brown and Company, a New York corporation,<br><br>Defendants. | Case No. 2:18-cv-01649-DGC<br><br>**Motion For Reconsideration Re: Dispute Over Who Originated The Title Of The Book**<br><br>(Assigned to the Hon. David G. Campbell) |
| Michael Breus and Lauren Breus, husband and wife,<br><br>Counterclaimants,<br><br>v.<br><br>WHEN Enterprises Corp., a Delaware corporation,<br><br>Counterdefendant. | |

Pursuant to Rule 59(e), Fed.R.Civ.P. and Local Rule 7.2(g), Plaintiffs IOW, LLC and WHEN Enterprises, Corp. request that this Court reconsider its finding in the August 26, 2019 Order (Dkt. 94) that it is undisputed that it was the publisher who came up with idea to title the book "The Power Of When." Plaintiffs respectfully submit that the Court engaged in clear error when it weighed disputed facts in favor of Defendants, the moving party on the issue, without considering the abject bias of the testifying witness. Instead, the Court should have concluded that there was a material question of fact with respect to Dr. Breus's role in creating the title of the book because (1) the title is nearly identical (the only difference is the addition of the word "the") to Plaintiff's proposed trademark; (2) the publisher asked Dr. Breus for input on the title <u>the very same day</u> as Randy Miller sent Dr. Breus highly confidential branding materials that included very similar phrases; (3) emails refer to text messages on <u>the very same day</u> from Dr. Breus about his input on the title; (4) those text messages are missing with no reasonable explanation for why they were deleted; and (5) the publisher's testimony is subject to impeachment because it has motivation to take responsibility for choosing the title. With such a fact question in place, the evidence should be presented at trial for the trier of fact to balance in their entirety, including witness credibility.

The Federal Rules of Civil Procedure do not expressly recognize a "motion for reconsideration." *Clough v. Rush*, 959 F.2d 182, 186 n. 4 (10th Cir. 1992). Instead such a motion is typically treated as a motion to alter or amend a judgment under Rule 59(e) or a motion for relief from judgments or orders under Rule 60(b). *See Computerized Thermal Imaging, Inc. v. Bloomberg, L.P.,* 312 F.3d 1292, 1296 n. 3 (10th Cir. 2002). "A motion for reconsideration of summary judgment is appropriately brought under Rule 59(e)." *Backlund v. Barnhart*, 778 F.2d 1386, 1388 (9th Cir. 1985).

Courts have established three grounds justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the

need to correct clear error or prevent manifest injustice. *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011); *Mustafa v. Clark County Sch. Dist.*, 157 F.3d 1169, 1178-79 (9th Cir. 1998). This Motion is brought under the third prong, which seeks to correct clear error on the ruling on the motion for summary judgment and prevent manifest injustice.

To warrant reconsideration of the Court's Order, this Motion demonstrates that the Court "committed clear error or the initial decision was manifestly unjust." *School Dist. No. 1J, Multnomah County, Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir.1993). In particular, the Court did not adequately consider the requirement that all reasonable inferences be drawn in favor of Plaintiffs on the summary judgment motion, as the nonmoving party, as opposed to in favor of the Defendants. The Court weighed witness testimony in favor of Defendants instead of Plaintiffs, despite there being controverting evidence and witness bias problems on the face of the record before the Court.

As is often repeated, on summary judgment, the moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Plaintiffs disagree that this burden was met by Defendants with respect to who it was that came up with the title for Dr. Breus's book. However, assuming the Court declines to reconsider that threshold burden, then it still must have drawn all reasonable inferences in favor of Plaintiffs when looking at the specific material facts in dispute. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). That did not occur here.

The record demonstrates that Tracy Behar was Breus's editor with the publishing company Little, Brown and Company. (Dkt. 73). In that role, she necessarily has a vested interest in the success of both the Book and Dr. Breus as an author. Her financial

2

wellbeing is tied to how the Book sells. Indeed, her employer was a party in this litigation until a recent settlement.

Interestingly enough, the Declaration of Behar refers to the titling of the book in the passive voice. (Dkt. 73). She says the Book "ultimately bec[a]me titled 'The Power of When…'" *Id*. at ¶ 2. Plaintiffs rely on the deposition of Tracy Behar and the declaration of Dr. Breus. (Dkt. 77, ¶ 21). However, Behar's testimony isn't anywhere near as conclusive as Defendants' Statement of Facts would suggest, or as the Court accepted without acknowledging the underlying witness bias of Ms. Behar.

There were a few lines of testimony in the deposition of Ms. Behar with respect to the naming of the Book. To begin with, she testified that there were "probably lots of emails about the title" of the book. (Dkt. 77, Ex. B at 101:3-101:7). Those emails were between Ms. Behar, Val Frankel, Alex Glass and Dr. Breus. *Id*. In addition to those emails, Ms. Behar ***also*** had "an actual meeting every week to discuss titles of books" with her coworkers at Little Brown. (*Id*. at 101:24-102:2; 104:18-104:25).  Ms. Behar then continued on to testify that during a Little, Brown meeting, the title "The Power of When" was discussed based on prior conversations with Ms. Frankel and Dr. Breus about "The Science of When". (*Id*. at 105:19-107:16).

Defendants argue that the fact that the book title The Power of When is virtually identical to POWER OF WHEN, a phrase that Mr. Miller had engaged trademark counsel to search for availability, is pure coincidence. (See Dkt. 84-1, 6 of 41). However, the timeline of the evidence is beyond what can be chalked up to coincidence:

June 25, 2015 8:34 am:   Randy Miller sends Dr. Breus a highly confidential email that contained detailed branding samples, including iterations of "When" and "The Power" (Dkt. 84 at ¶¶ 54-57, Exhibit 13).

3

| | | |
|---|---|---|
| 1 | June 25, 2015 12:33 pm | Behar emails Dr. Breus saying that they needed to finalize a title and she needed ideas (Dkt. 84-14, p. 3) |
| 3 | June 25, 2015 2:08 pm: | Dr. Breus texts Alex Glass with "some thoughts" about the title of the book, apparently including the Science of When. (Dkt. 84-14 at p. 2). **Those texts are missing.** |
| 7 | June 25, 2015 10:59 pm: | Dr. Breus responds to Mr. Miller's email from earlier that day saying that he "wasn't a fan of any of them" and that the proposed branding, including the phrases that associated "The Power" with "When" were "slick or agency." (*Id*. at ¶ 58). |

Dr. Breus then adopted the title of "The Power of When" as the title of his book despite trying to convince Mr. Miller that similar taglines were slick or agency.

That the text messages between Dr. Breus and Alex Glass relating to the title of the book are missing is highly suspicious. (Dkt. 83 at fn. 1; *see also* Dkt. 84 at p. 40). In those same June 25, 2015 emails between Mr. Glass, Ms. Behar, Ms. Frankel and Dr. Breus (occurring on the same date that Randy Miller was emailing Dr. Breus about "The Power" and "When" being used together), Mr. Glass advised Ms. Behar that Dr. Breus had texted him "with some thoughts" about the book's title. *Id*. We don't know what those thoughts about the title were, because Dr. Breus deleted those texts, and now "does not recall" what he said. *Id*.

Without any conclusive testimony, it would be inequitable for the Court to presume that Dr. Breus did not have any input on the use of the title "The Power of When."

Furthermore, Ms. Behar is inherently biased in her testimony which attempts to shield Dr. Breus from having any role in the creation of the title.

4

> Bias is a term used in the "common law of evidence" to describe the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party. Bias may be induced by a witness' like, dislike, or fear of a party, or by the witness' self-interest. Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony.

*United States v. Hankey*, 203 F.3d 1160, 1171 (9th Cir. 2000) (quoting *United States v. Abel*, 469 U.S. 45, 52 (1984)). The bias of Ms. Behar is substantial. As the publisher of Dr. Breus' book, she would have known at the time she testified that if Dr. Breus violated his NDA when titling the book, the book title was at risk. Changing the title to a published book would cost Little, Brown (Ms. Behar's employer) money, on top of the negative publicity that will be associated with the finding of fact that Dr. Breus misappropriated the title of his book from Plaintiffs. Such negative publicity and expense cannot be ignored when considering Ms. Behar's already suspicious testimony that it was Little, Brown who participated in the creation of a title that was virtually identical to one of Plaintiff's proposed trademarks.

Dr. Breus himself is also biased regarding the development of the book title. Quite frankly, it is incredulous to believe that despite receiving an email from Randy Miller on June 25, 2015 about using the phrases "The Power" and "When" as taglines for Plaintiffs' business, that Dr. Breus has **no input whatsoever** in creating the title of his book.

Evidence of witness bias is generally relevant under Rule 401 and admissible to impeach a witness. *See United States v. Abel*, 469 U.S. 45, 50–51, 105 S. Ct. 465, 469, 83 L.Ed. 2d 450 (1984) ("A successful showing of bias on the part of a witness would have a tendency to make the facts to which he testified less probable in the eyes of the jury than it would be without such testimony."). Bias includes evidence about the

5

"relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party," which includes evidence of a witness's "self-interest." *Id.* at 52, 105 S. Ct. at 469. "Pecuniary interest may be shown to prove bias," including the amount of money at issue, "because the jury may reasonably believe that the willingness of a witness to lie or shade testimony would be affected, not only by whether the results may benefit him, but also by how much." *United States v. Harris*, 185 F.3d 999, 1008 (9th Cir. 1999) (finding trial court's exclusion of witnesses' pecuniary bias violated defendant's constitutional rights, but finding error harmless); *see also United States v. Dees*, 34 F.3d 838, 844 (9th Cir. 1994) (finding evidence of witness's pecuniary interest in particular outcome of trial admissible to prove bias and not unfairly prejudicial); *United States v. Int'l Bus. Machines Corp.*, 84 F.R.D. 651, 652 (S.D.N.Y. 1979) ("Inquiry into a witness' financial interest in the outcome of a case, and the extent of that interest, is essential if bias is to be uncovered."). This bias is real, and should be considered by a trier of fact when weighing the testimony of Dr. Breus and Ms. Behar regarding the creation of the title "The Power of When."

Witness bias creates a material issue of fact as to whether Dr. Breus suggested the title to Little, Brown, or Little, Brown suggested the title to him. Plaintiffs should have been allowed to prove at trial, through circumstantial evidence or otherwise, including attacking the credibility of the testifying witnesses, that what is claimed by Defendants in the summary judgment motion regarding the development of the title is not actually how the events unfolded.

For these reasons, Plaintiff respectfully request that the Court modify its Order dated August 26, 2019, and withdraw (1) its finding of fact that it was the publisher who singlehandedly originated the title "The Power of When," and (2) its dismissal of

Plaintiffs' claim for breach of contract based on its factual finding that the publisher chose the title. (Dkt. 94 at pp. 6-8).

DATED this 9th day of September, 2019.

**Jaburg & Wilk, P.C.**

/s/Maria Crimi Speth
Maria Crimi Speth
Laura Rogal
Michael B. Dvoren
Aaron K. Haar
3200 N. Central Avenue, 20th Floor
Phoenix, AZ 85012
Attorneys for Plaintiffs/Counterdefendant

**CERTIFICATE OF SERVICE**

I hereby certify that on the 9th day of September, 2019, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing, and for transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Sean Garrison
Bacal & Garrison Law Group
6991 East Camelback Road, Suite D-102
Scottsdale, AZ 85251
Sean.Garrison@bacalgroup.com
Attorneys for Defendants/Counterclaimants Breus

/s/ Joy Brown

19596-19596-00001\LAR\MCS\3643727.2